IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-HC-2153-FL

| | |
|---|---|
| CHARLES HAWKINS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| WARDEN BRICK TRIPP and THE ) | |
| UNITED STATES PAROLE BOARD, ) | |
| ) | |
| Respondents. ) | |

The matter is before the court on respondents' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 8), which this court construes as a motion for summary judgment pursuant to Rule 56 because respondents attached documents outside of the scope of the pleadings. The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants respondents' motion.

## STATEMENT OF THE CASE

On April 13, 1989, the District of Columbia Superior Court sentenced petitioner to an aggregate sentence of 4-12 years imprisonment on his conviction for possession with the intent to distribute cocaine and possession with the intent to distribute dilaudid. See (Pet'r's Resp. p. 2; Resp't's Mem. Ex. A, p. 3; Ex. C. p. 1.) On June 8, 1995, the District of Columbia Board of Parole ("D.C. Board") released petitioner on parole, and set his parole expiration date as April 14, 2006. (Rep't's Mem. Ex. A, p. 1.)

On June 1, 2000, petitioner was arrested for possession with the intent to distribute marijuana. (Id. Ex. B, p. 3.) The D.C. Board subsequently issued a parole violator warrant charging petitioner with a law violation based upon his pending criminal charges. (Id.)

On December 22, 2000, the United States Parole Commission[1] (the "Commission") conducted a parole revocation hearing. (Id. Ex. D, p.1.) At the conclusion of the hearing, the Commission found that petitioner committed the charged law violation and revoked petitioner's parole. (Id. p. 4.) Petitioner was reparoled on December 4, 2001, after serving 14 months imprisonment for the parole violation. (Id. Ex. F, p. 2.) The full term expiration of petitioner's sentence was November 9, 2011. (Id.)

On September 30, 2004, petitioner was arrested and charged with conspiracy and possession with the intent to distribute heroin. (See id. Ex. G, p. 2.) On April 28, 2005, the Commission issued a parole violator warrant that charged petitioner with the use of dangerous drugs. (Id. Ex. H, p.1.) On April 20, 2005, in the United States District Court for the District of Columbia, petitioner pleaded guilty to one count of conspiracy to distribute and possess with the intent to distribute heroin, and petitioner subsequently was sentenced to a term of 180 months imprisonment followed by a five year term of supervised release. (Id. Ex. I, p. 4.)

Following petitioner's conviction, the Commission supplemented its parole warrant to reflect the new conviction. (Id. Ex. J.) The Commission placed its warrant as a detainer for the duration of petitioner's federal sentence. (Id. Ex. K.) On January 28, 2014, the Commission conducted a dispositional review of petitioner's detainer pursuant to 28 C.F.R. § 2100(c) and ordered that the

---

[1] The Commission assumed responsibility for making parole release decisions for all eligible D.C. Code Offenders on August 5, 1998, pursuant to the Revitalization Act and D.C. Code § 24-409. D.C. Code § 24-131. Effective August 5, 2000, the Commission was given the remaining responsibilities of the former D.C. Board of Parole regarding the supervision of parolees and the revocation of parole for release violations. D.C. Code § 24-1231(a)(2).

2

detainer stand.  (Id. Ex. K.)  As a result, the parole violation warrant will be executed when petitioner completes his 180 month term of imprisonment.  (Id.)  Petitioner's projected release date is October 25, 2017.  (Id. Ex. L.)

On July 11, 2014, petitioner filed this action pursuant to 28 U.S.C. § 2241, challenging the Commission's parole violation detainer.  In particular, petitioner asserts that the Commission delayed executing his parole violation warrant, thus delaying his parole violation hearing.  As relief, petitioner requests that his parole violation warrant be disposed of through the Commission's expedited revocation process.  Respondents subsequently moved for summary judgment, and the motion was fully briefed.

On July 21, 2015, the court entered an order directing respondents to supplement their motion for summary judgment to address petitioner's contention, raised in response to respondent's motion to dismiss, that his parole detainer is invalid because petitioner served the underlying sentence and no longer was on parole at the time the detainer was entered.  Respondents subsequently filed their supplemental response, and petitioner did not file a reply.

## DISCUSSION

A.        Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986).  The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material

3

fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B. Analysis

    1. Challenge to Parole Violator Warrant

Petitioner contends that the Commission's parole violator warrant is invalid because the Commission did not have jurisdiction to revoke his parole on the grounds that his underlying conviction for the offenses of possession with the intent to distribute cocaine, and possession with the intent to distribute dilaudid expired before the Commission issued its parole violator warrant in 2005. In support of his claim, petitioner contends that on June 1, 1990, the District of Columbia Detention Center at Lorton ("Lorton") awarded him 412 days of jail credit and 1,440 days of statutory good-time credit, which reduced the expiration of his sentence from April 12, 2001, to April 13, 1997. Petitioner, also, asserts that he subsequently was awarded 336 days of good-time credits which further reduced his sentence from April 13, 1997, to May 3, 1996. In light of his sentence credit, petitioner asserts that when the District of Columbia Parole Board released petitioner on parole on June 8, 1995, he had approximately one year left on his District of Columbia sentence.

As stated, petitioner is a D.C. Code Offender. The D.C. Code and federal good-time system differ. The Fourth Circuit Court of Appeals has explained:

> Under the federal good time system, the Bureau of Prisons applies good time credits to the prisoner's maximum sentence which moves the mandatory release date forward, but does not affect the minimum term required to be served before an inmate becomes eligible for parole. 18 U.S.C. § 4161 (1982). Under the District scheme, good time credits are applied to reduce the minimum term of

4

> imprisonment, which determines the date of parole eligibility, as well as to reduce the maximum term of imprisonment, which determines mandatory release. D.C. Code § 24–428(b).

Moss v. Clark, 886 F.2d 686, 688 (4th Cir. 1989).

Further, District of Columbia Code § 24-406(a) provides that:

> When a prisoner has been retaken upon a warrant issued by the United States Parole Commission ("Commission"), he shall be given an opportunity to appear before the Commission, a member thereof, or an examiner designated by the Commission. At such hearing he may be represented by counsel. The Commission may then, or at any time in its discretion, revoke the parole or modify the terms and conditions thereof. If the order of parole shall be revoked, the prisoner, unless subsequently re-paroled, shall serve the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him after his return to custody. For the purpose of computing commutation for good conduct, the remainder of the sentence originally imposed shall be considered as a new sentence.

Based upon the foregoing, petitioner's good-time credits did not reduce his full term sentence date, and were extinguished upon his parole release and revocation. See Moss, 886 F.2d at 688; D.C. Code § 24-221.01 ("Educational good time credits authorized by the provisions of this section shall be applied to the person's . . . maximum term of imprisonment to determine the date when release on parole becomes mandatory."); D.C. Code § 24-221.01a ("Meritorious good time credits authorized by this section shall be applied to the person's . . . maximum term of imprisonment to determine the date when release on parole becomes mandatory."); see also, Rone v. Johnson, No. 1:08cv399, 2009 WL 1076747, at *4 (E.D. Va. Apr. 21, 2009) ("Rone was not denied that interest, since he received the full benefit of his earned good-time credits through his early release. Rone effectively "used up" his good-time credits to obtain his early release, and he was not entitled to the return of these credits upon his reincarceration for violating conditions of his parole.") (citation

5

omitted); Brown-El v. Virginia Parole Bd., 948 F. Supp. 558, 560-561 (E.D.N.C. 1996) ("Put another way, petitioner "used up" his good time credits to win early release on parole.").

Petitioner also contends that his underlying D.C. Code conviction has expired because he is entitled to credit on his sentence for his street time, which refers to credit given an inmate, with an unexpired sentence, for his time spent on parole. District of Columbia Code § 24-406(a) addresses this issue and specifically provides that: "If the order of parole shall be revoked, . . . [t]he time a prisoner was on parole shall not be taken into account to diminish the time for which he was sentenced."[2] Subsequent to the passage of D.C. Code § 24-406(a), the District of Columbia enacted the Good Time Credits Act ("GTCA"), D.C. Code § 24-221.03(a), which provides, in pertinent part, that "[e]very person shall be given credit on the maximum and the minimum term of imprisonment for the time spent in custody or on parole as a result of the offense for which the sentence was imposed."[3]

Although D.C. Code § 24-406(a) and D.C. Code § 24-221.03 appear to be in conflict, any potential conflict in the interpretation of these statutes was resolved when the District of Columbia Court of Appeals held that D.C. Code § 24-406(a) was not repealed by the GTCA, and, therefore, parole violators were not entitled to "street time" credit against their sentence when their parole was revoked. See United States Parole Comm'n v. Noble, 693 A.2d 1084, 1086-87 (D.C. 1997), adhering to on reh'g en banc, 711 A.2d 85 (D.C. 1998); Jones v. Bureau of Prisons, No. 02-5054, 2002 WL 31189792, at *1 (D.C. Cir. Oct. 2, 2002) ("Under District of Columbia law, appellant cannot receive credit for time on parole, commonly known as "street time," after his parole has been

---

[2] Section 24-406 previously was codified at D.C. Code § 24-206.

[3] Section 24-221.03 previously was codified at D.C. Code § 24-431.

6

revoked.") (citation omitted). Therefore, § 24-406(a) controls and petitioner is not entitled to credit on his sentence pursuant to the GTCA.[4]

In a related argument, petitioner contends that the Commission lacks authority to extend his sentence beyond the date of release imposed by the sentencing court. However, because § 24-406(a) requires that the Commission not count street time if parole has been revoked, a petitioner's cumulative sentence is not increased when, upon parole revocation, he is returned to custody to serve the remainder of his sentence. See Noble, 693 A.2d at 1086-87. Accordingly, petitioner's D.C. Code sentence was not expired when the Commission lodged its detainer.

2. Revocation Hearing

Petitioner asserts that the Commission has unlawfully delayed executing his parole violation warrant and his parole revocation hearing, depriving him of the opportunity to serve his federal sentence concurrently with any future sentence he receives for his parole revocation. However, as set forth below, the Commission need not execute its parole violation warrant and conduct a parole hearing until after petitioner has served his 180 month sentence.

In Morrissey v. Brewer, 408 U.S. 471 (1972), the United States Supreme Court held that due process mandates that a parole revocation hearing take place within a reasonable time after a parolee is taken into custody. Id. 485-89. The Court, however, later held that the procedural protection of

---

[4] The court notes that in December 2008, the D.C. Council passed the Equitable Street Time Amendment Act, which amended D.C. Code § 24-406 to limit the forfeiture of the time spent on parole to offenders who have been convicted of a new offense punishable by imprisonment, or who have intentionally refused or failed to respond to a request of the Parole Commission. See 74 Fed. Reg. 28602, 28603, codified at D.C. Code §24-406. The Act specifically states that the provisions permitting the award of credit toward completion of a sentence for all time served on parole "shall apply only to any period of parole that is being served on or after May, ____ [sic] 2009, and shall not apply to any period of parole that was revoked prior to May, ____ [sic] 2009." D.C. Code § 24–406. Accordingly, the Act is not applicable to petitioner's prior parole revocations because petitioner's parole last was revoked on December 22, 2000. The court expresses no opinion as to whether petitioner will receive street time credit should the Commission execute its pending warrant subsequent to the completion of petitioner's current federal sentence. See 28 C.F.R. § 2.100(d)(2).

7

an immediate hearing is inapplicable where an inmate is in custody pursuant to a federal conviction, and has a detainer lodged against him for a later revocation hearing. Moody v. Daggett, 429 U.S. 78, 87-88 (1976). The Moody Court determined that a prompt hearing was unnecessary under these circumstances because: (1) the subsequent conviction establishes probable cause that a condition of release has been violated; and (2) the detainer does not immediately deprive the inmate of liberty. Id. at 86, n.7; see also, Posey v. Dewalt, 86 F. Supp.2d 565, 569 (E.D. Va. 1999) ("[T]he Supreme Court has since held [in Moody] that the prompt parole revocation hearing guaranteed by *Morrissey* is inapplicable where, as here, an individual has already been lawfully deprived of his liberty and is in custody on a criminal conviction."), appeal dismissed, 215 F.3d 1320 (4th Cir. 2000).

Here, petitioner is in custody pursuant to a federal conviction. Petitioner's parole violator warrant was lodged as a detainer, and the warrant has not yet been executed. Because petitioner is in custody pursuant to a federal conviction, the prompt parole revocation hearing requirement set forth in Morrissey is inapplicable.

To the extent petitioner contends that the pending detainer is affecting his ability to participate in institutional programs, he fails to state a claim because petitioner has not demonstrated a constitutionally protected liberty interest in participating in such programs. See Moody, 429 U.S. 88 n.9; Gaddy v. Michael, 519 F.2d 669, 678 (4th Cir. 1975) (finding that former parolee's loss of prison privileges, opportunities to participate in programs, and gain time are not evidence of prejudice that would require invalidation of parole violation warrant). Thus, the court GRANTS respondents' motion for summary judgment as to this claim.

3. Expedited Revocation Procedure

Petitioner requests that the parole violation warrant be disposed of through the Commission's expedited revocation process. The Commission's expedited revocation process allows a parolee to accept responsibility for his violations, waive his right to a revocation hearing, and consent to parole revocation on the record. See 28 C.F.R. § 2.66. However, the execution of the parole violation warrant is the event that triggers the need for a revocation hearing, and a petitioner is not eligible for an expedited revocation procedure until he completes the service of the intervening sentence. See Moody, 429 U.S. at 89. Because petitioner has not completed the service of his federal sentence, he is not entitled to a expedited revocation procedure at this time.

## CONCLUSION

For the foregoing reasons, respondent's motion for summary judgment (DE 8) is GRANTED, and the petition is DISMISSED without prejudice. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 31st day of August, 2015.

LOUISE W. FLANAGAN
United States District Judge